UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

James Lampkin, Sr.,                                             Case No. 3:22-cv-1810

              Plaintiff,

      v.                                                      MEMORANDUM OPINION
                                                             AND ORDER

Silver Line Building Products, LLC, *et al.*,

              Defendants.

## I. INTRODUCTION

Through this action, Plaintiff James Lampkin, Sr. brings employment discrimination and retaliation claims against his former employers, Defendants Silver Line Products, LLC and Cornerstone Building Brands.[1] (Doc. No. 16). Defendants now move to dismiss many of those claims. (Doc. No. 22). Lampkin filed a brief opposing dismissal of any claim but requesting leave to file a Second Amended Complaint if I conclude dismissal of any claim is warranted. (Doc. No. 26).[2]

---

[1] In the Amended Complaint, Lampkin asserts, "During all material events asserted herein, Silver Line Building Products, LLC and Cornerstone Building Brands were joint employers of Lampkin and are jointly referred to herein as Cornerstone." (Doc. No. 16 at 2). He previously stated the same allegation in his original Complaint, (Doc. No. 1 at 2), and Defendants denied it. (Doc. No. 8 at 1). Defendants do not object to this "joint employer" characterization at this time. Therefore, it is not relevant for purposes of this Opinion, and I will refer to the actions allegedly taken by Lampkin's employer as "Defendants'" actions collectively.

[2] Lampkin filed corrected versions of his brief in opposition because the original submission included exhibits that were filed incorrectly. (*See* Doc. No. 23 marked as "filing error"). The versions of Lampkin's brief filed on the docket do not have any substantive differences. (*Compare* Doc. Nos. 23, 25, and 26). Accordingly, I will consider only the final "corrected" version of this brief. (Doc. No. 26).

Defendants filed a reply brief and, in it, urge me not to grant leave to amend. (Doc. No. 24). For the reasons stated below, I grant Defendants' motion in part and deny it in part, and I deny Lampkin's request for leave to amend.

## II. BACKGROUND

On August 29, 2020, Lampkin went to the hospital after experiencing shortness of breath and chest pain the previous day. (Doc. No. 16 at 9). He was diagnosed with an acute pulmonary embolism and remained in the hospital from August 30, 2020, until September 3, 2020. (*Id.*). On August 31, 2020, his wife informed Defendants that Lampkin had been admitted to the hospital. (*Id.* at 10). Lampkin followed up by informing his then-supervisor, Crystal Hall, five days later. (*Id.*).

Because of the embolism, Lampkin's doctor completed Family Medical Leave Act ("FMLA") forms "placing Lampkin continuously off work" from August 30, 2020, until October 11, 2020. (*Id.* at 10-11).

Pursuant to Defendants' policy at the time, employees were required "to submit absence requests and/or FMLA request forms directly to VOYA [Financial]," who handled these requests on Cornerstone's behalf. (*Id.* at 11-12). Lampkin complied with this policy by submitting his FMLA request documentation to VOYA. (*Id.* at 12). On September 29, 2020, VOYA retroactively approved Lampkin's FMLA leave request, but only from August 30, 2020, until September 27, 2020. (*Id.*). Lampkin asserts, "VOYA provided no justification for reducing Lampkin's total incapacitation date from October 11, 2020 to September 27, 2020." (*Id.* at 13).

Because Lampkin's doctor had not cleared him to return to work on September 27, 2020, Lampkin alleges he tried to call off that day, but no one in human resources answered the phone. (*Id.* at 13). Lampkin also texted Hall on September 27, 2020, to notify her that he had not been released to work. (*Id.*). Hall responded on October 5, 2020, "'Unfortunately you still have to

contact me daily according (sic) work.'" (*Id.* ("(sic)" added by Lampkin)). Lampkin alleges he did so. (*Id.* at 15).

Despite this, on October 8, 2020, Jennifer Harrison, Cornerstone's Human Resources Business Partner, sent Lampkin a letter stating: "You were scheduled to return to work on 9/28/20. As of today, you have not returned to work nor have you contacted us in any way. Effective immediately, we accept your resignation of employment." (*Id.* at 14-15). Lampkin asserts he did not resign but was terminated.

On May 10, 2021, Lampkin filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC") providing as follows:

> DISCRIMINATION BASED ON (Check appropriate box(es).)
> [X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
> [X] RETALIATION  [X] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION
> [ ] OTHER (Specify)
>
> DATE(S) DISCRIMINATION TOOK PLACE
> Earliest: 09-04-2020   Latest: 10-08-2020
> [ ] CONTINUING ACTION
>
> THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):
> On or about October 7, 2013, I started working for the above-named Respondent as a Production VSI. I was in the Shipping department when I was terminated.
>
> On or about August 30, 2020, I was admitted to the hospital because of my disability. Respondent was contacted and I was approved for time off on or about September 4, 2020, as a reasonable accommodation for my disability. On or about October 8, 2020, in retaliation to my request for a reasonable accommodation for my disability, Respondent terminated me. I was replaced with someone significantly younger.
>
> I believe I have been discriminated against due to my disability, and in retaliation for engaging in a protected activity, in violation of Title I of the Americans with Disabilities Act of 1990, as amended (ADA). I also believe that I was discriminated against because of my age, 57 (Year of Birth: 1964), and in retaliation for engaging in protected activity, in violation of the Age Discrimination in Employment

(Doc. No. 22-2 at 1; *see also* Doc. No. 16 at 2).

Before receiving a Notice of Right to Sue letter, Lampkin filed his initial Complaint on October 7, 2022, asserting a claim of interference and a claim of retaliation under the FMLA. (*See* Doc. No. 1). After the EEOC issued the Notice of Right to Sue on April 11, 2023, (Doc. No. 16-2), Lampkin filed his Amended Complaint on July 7, 2023, restating his two FMLA claims and adding claims of: (1) race-based discrimination and retaliation in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Ohio Revised Code § 4112.01 et seq., (2) disability-based discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and Ohio Revised Code § 4112.01 et seq., and (3) age-based discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Ohio Revised Code § 4112.01 et seq.

### III.   STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citations and quotation marks omitted)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action."). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

4

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555); *see also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008).

The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV.  ANALYSIS

Defendants move to dismiss all but Lampkin's two FMLA claims. (*See* Doc. No. 22 at 3). Namely, Defendants seek dismissal of all discrimination and retaliation claims under Title VII, the ADA, the ADEA, and Ohio law.

### A.  CLAIMS RELATED TO RACE

Defendants argue Lampkin's Ohio and Title VII race-based claims must be dismissed for failure to exhaust his administrative remedies because he failed to check the "race" box on the OCRC Charge of Discrimination form and "did not describe any allegations related to race discrimination at all in his charge." (*See* Doc. No. 22-1 at 5-7).

At the outset, I reject Defendants' assertion that an administrative exhaustion requirement applies to Lampkin's Ohio law claims. (*See* Doc. No. 22-1 at 2 n.1, 5 n.4). Ohio's recently-enacted exhaustion requirement "is not retroactive and does not apply to claims arising before the amendments' effective date of April 15, 2021." *Burch v. Ohio Farmers Ins. Co.*, 211 N.E.3d 202, 208-09 (Ohio Ct. App. 2023); *see* O.R.C. § 4112.052(B)(1)(a). Defendants have admitted Lampkin's

5

employment ended on October 8, 2020. (Doc. No. 8 at 2). Because "the present matter concerns events before that 2021 amendment, no exhaustion requirement attaches to Plaintiff's claims under Ohio law." *Smith v. Lorain Cnty. Veteran's Serv. Comm'n*, No. 1:21-cv-01525, 2024 WL 1375946, at *7 (N.D. Ohio Mar. 30, 2024). Therefore, I deny Defendants' motion to dismiss Lampkin's Ohio law race discrimination and retaliation claims for failure to exhaust administrative remedies.

Remaining in dispute is whether Lampkin's Title VII race-based claims fall within the scope of his EEOC charge such that they may be considered administratively exhausted.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e–5(f)(1) and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). Where, as here, the plaintiff filed his EEOC charge *pro se*, the charge "should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir 2006) (internal quotation marks and further citation omitted).

Ultimately, "[t]he purpose of the [exhaustion] requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). "As a result, 'whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" *Younis*, 610 F.3d at 362 (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)).

Construing Lampkin's *pro se* EEOC charge liberally, I am not persuaded that Lampkin did not check the "race" box as Defendants insist. Defendants are correct in stating Lampkin did not "*digitally* mark[ ]" the "race" box. (Doc. No. 22-1 at 1) (emphasis added). But he did mark what could be construed as an "X" in that box by hand. (Doc. No. 22-2). As such, I reject Defendants'

6

argument that Lampkin did not exhaust his Title VII claims because he did not check the "race" box.

Anticipating this conclusion, Defendants argue, "[e]ven if the Court were to consider Plaintiff's illegible scribblings as 'checking the box' for Race of the EEOC charge, . . . it is the facts alleged in the body of the charge that govern." (Doc. No. 24 at 3). I agree to the extent that I conclude the EEOC charge must be considered as a whole when determining whether a claim has been administratively exhausted.

On the charge form, Lampkin he stated the alleged discrimination and retaliation based on his race occurred between September 4, 2020, and October 8, 2020. (Doc. No. 22-2). The facts he sets forth to describe the "particulars" of the conduct charged relate to his termination and request for medical leave. Within this section, he also asserts he was fired because of his disability, because of his age, and in retaliation for protected activity under the ADA and ADEA. But he says nothing of any discrimination based on race or retaliation he experienced for opposing racial discrimination.[3] (*Id.*).

Now, in the Amended Complaint, Lampkin alleges he began experiencing racial discrimination "[a]s early as October 2013." (Doc. No. 16 at 3). Specifically, he states facts in the

---

[3] With his opposition brief, Lampkin attached additional documents related to the EEOC's processing of his charge to show exhaustion. (*See* Doc. Nos. 25-2, 25-3, 25-4, and 25-5). He makes no attempt to explain why I may consider these documents at the motion to dismiss stage. And the Sixth Circuit has indicated that EEOC documents other than the charge itself do not bear on whether the plaintiff has exhausted their administrative remedies. *See Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 237 (6th Cir. 2017) (noting that "several of our sister circuits have held that allegations contained only in an intake questionnaire may not be considered for exhaustion purposes" and listing cases); *Powell v. Baptist Mem'l Hosp.*, No. 2:20-cv-02856-JTF-atc, 2023 WL 3000956, at *8 (6th Cir. Feb. 22, 2023); *Smith*, 2024 WL 1375946, at *5-*6 ("[P]ermitting documents filed subsequent to the charging document to expand the scope of the investigation would defeat the 'twin purposes of the exhaustion requirement,' which are to give employers notice of alleged violations and to give the EEOC an opportunity to conciliate the claim.") (quoting *Powell*, 2023 WL 3000956, at *9) (further citation omitted). Therefore, I will not consider these documents when determining whether Lampkin administratively exhausted his Title VII claims.

Amended Complaint related to incidents that occurred in 2018 and 2019. With each of these incidents, he alleges he, an African-American, (*id.* at 3), was harassed by a Caucasian employee or treated less favorably than a Caucasian employee. (*Id.* at 4-9). For some, Lampkin asserts he complained to Defendants, and Defendants responded with inaction or adverse action (such as by denying his requests to transfer in 2018 or denying him promotions). (*Id.*). The facts he sets forth related to race provide that the last dated incident occurred in November 2019, when he asked to be certified to use a tow motor. (*Id.* at 7-8). He asserts his request was denied, but a Caucasian was permitted to receive this certification. (*Id.* at 8).

Lampkin states no facts in the Amended Complaint to suggest anything related to his race occurred in the year 2020, let alone during the time frame set forth in the EEOC charge, aside from his allegation that he was terminated because of his race. (*Id.* at 16). Still, construing the EEOC charge liberally, I conclude that checking the "race" box would have "prompt[ed] the EEOC to investigate" whether he was terminated because of his race. *Younis*, 610 F.3d at 362 (further citation omitted). But checking this box alone would not have "prompt[ed] the EEOC to investigate" any Title VII violation that may have occurred prior to his termination. *Id.* Therefore, I conclude any Title VII claim that was unrelated to his termination was not "included in his EEOC charge," *id.* at 361, and must be dismissed for failure to exhaust administrative remedies.

Remaining is Defendants' argument that Lampkin's Title VII retaliation claim related to his termination must be dismissed for failure to exhaust because merely checking both the "retaliation" and "race" boxes would not have "prompt[ed] the EEOC to investigate" a Title VII retaliation claim. *Younis*, 610 F.3d at 362 (further citation omitted). I agree with Defendants.

In the charge narrative, Lampkin explicitly states he was terminated "in retaliation to my request for a reasonable accommodation for my disability," that he has been "discriminated against due to [his] disability, and in retaliation for protected activity, in violation of [the ADA]," and that he

8

has been "discriminated against because of my age . . ., and in retaliation for engaging in protected activity, in violation of the [ADEA]." (Doc. No. 22-1). The narrative does not mention Title VII protected activity, let alone state he was terminated for engaging in Title VII activity. (*Id.*). And a claim of Title VII retaliation based on opposition to race discrimination could not be "reasonably expected to grow" from the ADA and ADEA protected activity alleged in the charge. *Randolph*, 453 F.3d at 732 (citation omitted); *see also Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x. 229, 236-37 (6th Cir. 2017). Therefore, I must conclude Lampkin's Title VII retaliation claim was not "included in his EEOC charge," *Younis*, 610 F.3d at 361, and dismiss this claim for failure to exhaust administrative remedies.

Ultimately, Lampkin "included in his EEOC charge," *id.* at 361, only his Title VII discrimination claim that he was terminated because of his race. Defendants' motion to dismiss is denied as to Lampkin's Title VII discrimination in termination claim but is granted as to all other Title VII claims.

### B.    RETALIATION CLAIMS RELATED TO AGE AND DISABILITY

At the outset, I note that within their briefing on Lampkin's retaliation claims related to age and disability, the parties do not set forth any argument that would apply only to the Ohio law claims and do not analyze the merits of the Ohio law claims separately from the related federal claims. Defendants are correct that they need not do so because "claims under R.C. § 4112.02 related to age and disability discrimination . . . are analyzed in the same fashion" as those under the ADEA and the ADA, respectively. (Doc. No. 22-1 at 10 (citing *Crossley v. Kettering Adventist Healthcare*, No. 23-3346, 2024 WL 338163, at *5 (6th Cir. Jan. 30, 2024))); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (as applied to ADEA and related Ohio retaliation claims); *Rorrer v. City of Stow*, 743 F.3d 1025, 1030 n.1, 1046 (6th Cir. 2014) (as applied to ADA and related Ohio law retaliation claims). Because "the parties agree [Lampkin's Ohio law] claims rise

9

and fall with his [ADEA and] ADA claims," I will not evaluate his Ohio law claims separately either. *Rorrer*, 743 F.3d at 1030 n.1.

Turning to the merits, I first address Defendants' general argument that Lampkin's ADEA and ADA discrimination and retaliation claims must be dismissed because Lampkin fails to plead facts establishing a prima facie case of any of these claims.[4] (Doc. No. 22-1 at 8-11). As Lampkin correctly asserts, (Doc. No. 26 at 1), "at the motion-to-dismiss stage, a plaintiff is not required to plead facts establishing a prima facie case as is required under *McDonnell Douglas*." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024)) (further citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Despite Defendants' failure to apply the correct standard at this stage in the litigation, I will consider the substance of their arguments when assessing whether Lampkin has set forth "sufficient 'factual content' from which [I], informed by [my] 'judicial experience and common sense,' could 'draw the reasonable inference,'" that Defendants violated the ADEA or the ADA. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678-79).

1. **Discrimination Claims**

The ADA prohibits an employer from discriminating against an employee because of that employee's disability. *See* 42 U.S.C. § 12112(a). And the ADEA prohibits an employer from discriminating against an employee who is at least 40 years old "because of such individual's age."

---

[4] Defendants also argue any claim, including Lampkin's age and disability claims, based on any event that occurred more than 300 days before Lampkin filed his charge of discrimination with the OCRC on May 10, 2021 must be dismissed as untimely. (Doc. No. 22-1 at 7; Doc. No. 24 at 6). In support, Defendants cite a single district court case, which dealt with only Title VII. *See E.E.O.C. v. Kaplan Higher Educ. Corp.*, 790 F. Supp. 2d 619 (N.D. Ohio 2011). Because Defendants fail to make any argument or cite any legal authority to show the same applies to claims under the ADA or ADEA, let alone Ohio law, Defendants do not meaningfully argue Lampkin's age or disability-based claims must be dismissed as untimely.

10

29 U.S.C. § 623(a)(1). Lampkin alleges Defendants violated both by terminating him because of his disability and age – 57, at the time of termination. (Doc. No. 16 at 17).

Defendants argue Lampkin's disability and age discrimination claims must be dismissed because Lampkin did not plead facts "identify[ing] a[ ] similarly situated comparator sufficient to establish a prima facie case."[5] (Doc. No. 24 at 7; *see also* Doc. No. 22-1 at 8-10). But aside from the fact that Lampkin need not plead facts sufficient to establish a prima facie case, *Ogbonna-McGruder*, 91 F.4th at 839, identifying a similarly-situated comparator is not required to establish a prima facie case of age or disability discrimination at even the summary judgment stage.

While Defendants cite *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008), which states the prima facie elements of a disability discrimination claim, they fail to acknowledge that these elements are not the same as those of an age discrimination claim. (Doc. No. 22-1 at 8). That is, *Talley* states: "To establish a prima facie case of discrimination under the ADA, a plaintiff must show '(1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability.'" 542 F.3d at 1105 (quoting *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002)). Defendants' legal argument that Lampkin must

---

[5] Defendants also introduce their similarly-situated argument with a general assertion that these claims should be dismissed because of a "lack of allegations plausibly supporting any form of intentional discrimination." (Doc. No. 22-1 at 8). They follow this up by arguing that because Lampkin "himself does not even allege he was disabled until August 2020[,] (Compl. ¶¶ 91-92)[, i]t thus is impossible for any of his claims of disability discrimination before that date to have any merit." (*Id.* at 8 (citing Doc. No. 16 at 9)). But Lampkin does not seek to pursue a disability discrimination claim for a time before August 2020. With respect to Lampkin's age discrimination claim, Defendants offer nothing to support their vague "lack of allegations" assertion. Defendants also do not meaningfully respond to Lampkin's argument that he has set forth sufficient allegations to set forth an age discrimination claim. (*See* Doc. No. 26 at 7-8). Accordingly, I conclude Defendants' vague assertion of a "lack of allegations" is not a meaningful argument supporting its motion to dismiss and decline to consider it further.

identify a similarly-situated comparator to eventually satisfy his prima facie burden for his disability discrimination claim is wrong.

While Defendants' argument with respect to Lampkin's age discrimination claim is not as flawed, it is still incorrect.

"To establish a prima facie case of age discrimination, a plaintiff must show: '(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.'" *Blizzard*, 698 F.3d 275 (quoting *Swierkiewicz*, 534 U.S. at 510). A plaintiff could satisfy the fourth element by showing "he was treated differently from similarly situated employees outside the protected class." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). But this is by no means the *only* way he could do so.[6] *See Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1064 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (further quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978)) ("[T]he Supreme Court has repeatedly instructed us that the prima-facie-case requirement is not 'an inflexible rule' and instead may vary under particular factual circumstances."). In fact, as Defendants acknowledge, Lampkin could satisfy the fourth element by showing he "was replaced by someone outside of the protected class *or* he was treated differently than similarly situated employees outside the protected class." (Doc. No. 22-1 at 8 (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008)) (emphasis added).

Because neither the ADA nor the ADEA imposes an absolute requirement that a plaintiff identify a similarly-situated comparator, I reject Defendants' legal argument to the contrary. Further,

---

[6] In Defendants' reply brief, they respond to Lampkin's "temporal proximity" argument by suggesting temporal proximity can apply only to retaliation claims and never to employment discrimination claims. (Doc. No. 24 at 7-8). But Defendants cite no authority to support such a sweeping argument. And Sixth Circuit authority suggests temporal proximity can give rise to an inference of discrimination for purposes of an employment discrimination claim. *See, e.g., Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006) ("Temporal proximity can also satisfy the [causal] nexus requirement in the pregnancy discrimination context.").

12

because Defendants make no attempt to show how Lampkin's alleged failure to plead facts identifying a similarly-situated competitor could warrant dismissal of any aspect of Lampkin's age or disability discrimination claims and I am "not in the business of developing parties' arguments for them," *Parker v. Winwood*, 938 F.3d 833, 837 (6th Cir. 2019), I deny Defendants' motion to dismiss Lampkin's age and disability discrimination claims.

### 2. Retaliation Claims

Defendants contend dismissal of Lampkin's ADEA and ADA retaliation claims is warranted because Lampkin failed to state facts showing: (1) he engaged in protected activity under the ADEA or ADA; and (2) a causal connection between ADEA or ADA protected activity and any adverse employment action. (Doc. No. 22-1 at 10-11; Doc. No. 24 at 8-10).

### a. ADEA Retaliation

"The ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination." *Blizzard*, 698 F.3d at 288 (citing 29 U.S.C. § 623(d)).

In his opposition brief, Lampkin asserts the following to show he engaged in ADEA protected activity:

> In November 2019, Lampkin made requests to be certified on the tow motor, which would help in his performance. Doc # 16, at ¶ 75. Despite Lampkin's repeated complaints about not getting certified, Defendants permitted a significantly younger individual to get certified on the tow motor. *Id.* at ¶ 79. As such, Defendants were aware in November 2019 that Lampkin reported age discrimination. More, Lampkin specifically asserted that he complained about the age discrimination he was experiencing to Defendants. Doc # 16, at ¶ 227.

(Doc. No. 26 at 9-10 (citing Doc. No. 16 at 7-8, 22)).

Complaints of age discrimination are recognized as ADEA protected activity. *Milczak v. General Motors, LLC*, 102 F.4th 772, 788 (6th Cir. 2024) (citing *Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007)). But contrary to Lampkin's artful narration, the Amended Complaint

does not state sufficient factual allegations to plausibly allege Lampkin complained of age discrimination in November 2019 or at any other point.

The following paragraphs of the Amended Complaint provide Lampkin's full account of the "tow motor" incident:

> 75. In November 2019, Lampkin repeatedly made requests to Hall and to Defendants that he wanted to get certified to use a tow motor in shipping.
>
> 76. Defendants refused to permit Lampkin to get certified to use a tow motor in the shipping department.
>
> 77. Refusing to permit Lampkin to use a tow motor in the shipping department made it more difficult for Lampkin to complete his tasks, which would make it appear as if he was not as productive as other workers.
>
> 78. Despite refusing to permit Lampkin to get certified to use a tow motor in the shipping department in November 2019, Defendants permitted Maliki Clark to get certified to use the tow motor.
>
> 79. During all material events asserted herein, Clark was approximately 23 years old, and Caucasian.
>
> 80. Defendants did not permit Lampkin to get certified to use the tow motor in the shipping department because of his race.
>
> 81. Defendants did not permit Lampkin to get certified to use the tow motor in the shipping department because of his age.
>
> 82. Defendants did not permit Lampkin to get certified to use the tow motor in the shipping department in retaliation for his race discrimination complaints.

(Doc. No. 16 at 7-8).

Defendants assert these allegations are insufficient to plausibly allege Lampkin engaged in ADEA protected activity because "[a]ll he has alleged is that he did not get 'certified on the tow motor' and then made complaints about it. (Pl.'s Resp. 9). This does not implicate age whatsoever." (Doc. No. 24 at 9).

I agree with Defendants to the extent that the facts stated in the Amended Complaint do not indicate Lampkin complained about this alleged incident of disparate treatment, let alone that he

14

reported it *as age discrimination* as he suggests now.  (See Doc. No. 26 at 9-10).  Only in paragraph 227 does Lampkin allege, "As a result of the Defendants' discriminatory conduct described above, Lampkin complained about the age discrimination he was experiencing."  (Doc. No. 16 at 22).   But this allegation is located in the section of his Amended Complaint where he outlines the legal basis for his ADEA retaliation claim by reciting the elements for ADEA retaliation claim and affirming each is satisfied.  Read in context, paragraph 227 is "little more than 'legal conclusions couched as factual allegations' and need not be accepted as true under Rule 12(b)(6) scrutiny."  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Taking as true only the factual allegations in the Amended Complaint, Lampkin has not plausibly alleged he complained of age discrimination.  Therefore, I must conclude Lampkin falls short of his burden of plausibly alleging he engaged in ADEA protected activity and grant Defendants' motion to dismiss Lampkin's age-based retaliation claims.

### b.     ADA Retaliation

The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA.  42 U.S.C. § 12203(a).

Lampkin alleges he engaged in activity protected the ADA by requesting a reasonable accommodation for his disability.  (Doc. No. 26 at 8-9).  Specifically, he asserts that via his FMLA leave request, he sought an "accommodation in the form of time off work."  (*Id.* at 9).  Defendants concede "requesting an ADA accommodation itself may be a protected activity" but argue a request for FMLA leave is not a request for an ADA accommodation.  (*See* Doc. No. 24 at 9).  In support of

15

this argument, Defendants cite a single district court case that did not consider this issue or even deal with an ADA claim of failure-to-accommodate or retaliation. *See Schindewolf v. City of Brighton*, No. 14-12161, 2015 WL 3451150 (E.D. Mich. May 29, 2015).

Because the Sixth Circuit has now indicated multiple times that a request for medical leave (FMLA or not) can qualify as a request for an accommodation under the ADA, I reject Defendants' argument. *See King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 565-66 (6th Cir. 2023) (finding that a plaintiff's verbal request for FMLA leave to deal with her asthma "could qualify as a request for an accommodation" in the context of an ADA failure-to-accommodate claim); *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 423 (6th Cir. 2015) ("Hurtt's FMLA leave request notified ISI that Hurtt sought accommodation in the form of time off from work").

Lampkin has plausibly alleged he engaged in ADA protected activity by requesting an accommodation for his disability in the form of FMLA medical leave. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) ("Both this circuit and most others agree that requests for accommodation are protected acts [under the ADA]."); *see, e.g., Holt v. Cmty. Action Council for Lafayette, Bourbon, Harrison, & Nicolas Cntys., Inc.*, No. 5:22-cv-00236-GFVT-MAS, 2024 WL 2980798, at *5 (E.D. Ky. June 13, 2024); *Garcia v. Third Fed. Sav. & Loan Ass'n of Cleveland*, No. 1:06-CV-1990, 2007 WL 1235820 at *6 (N.D. Ohio Apr. 26, 2007).

Remaining is Defendants' causation argument. Defendants argue Lampkin has failed to plausibly allege his ADA protected activity was the "but for" cause of his termination.[7] (Doc. No.

---

[7] Defendants also argue Lampkin cannot plausibly allege he was terminated because he requested FMLA leave because he fails to allege facts showing Harrison knew of his request for FMLA leave. (*See* Doc. No. 22-1 at 11; Doc. No. 24 at 9). Assuming Harrison was the decisionmaker, as Defendants allege, and to the extent Lampkin was required to allege facts showing the decisionmaker had knowledge of his leave request, Lampkin has met this burden. The Amended Complaint includes a letter from Harrison to Lampkin, dated October 8, 2020, wherein Harrison acknowledges Lampkin was "scheduled to return to work on 9/28/20." (Doc. No. 16 at 15). The Amended Complaint also includes the following factual allegation that, nine days earlier, Lampkin's FMLA leave request had been approved for "August 30, 2020 through September 27, 2020." (*Id.* at

16

22-1 at 10-11; Doc. No. 24 at 9). Specifically, Defendants assert Lampkin's ADA claim that he was terminated because he *requested* FMLA retaliation claim must be dismissed because, in the Amended Complaint, Lampkin alleges "he 'was terminated . . . in retaliation for *utilizing* FMLA leave[,]' (Compl. ¶ 149)[, and b]oth . . . cannot be the but for cause of his termination." (Doc. No. 22-1 at 10-11 (quoting Doc. No. 16 at 15)) (emphasis added).

At the pleading stage, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Even if these two retaliatory motives are inconsistent, Rule 8(d) permits Lampkin to plead FMLA retaliation and ADA retaliation as alternative claims. *See, e.g.*, *Coffman v. Robert J. Young Co., Inc.*, 871 F. Supp. 2d 703, 717 (M.D. Tenn. 2012) (concluding the plaintiff's "allegations under the FMLA and [Tennessee Disability Act] are merely alternative theories of liability" under Rule 8); *Bolin v. Gen. Motors, LLC*, No. 16-13686, 2018 WL 2087313 at *3 n.2 (E.D. Mich. May 4, 2018) (noting that Rule 8(d)(3) permits "inconsistent" or "contradictory" statements of fact in a pleading) (internal citations and quotation marks omitted). Therefore, I reject Defendants' final causation-based pleading argument and deny their motion to dismiss Lampkin's ADA retaliation claim.

    **C.**     **PLAINTIFF'S REQUEST FOR LEAVE TO AMEND**

In his brief opposing dismissal, Lampkin argues he should be granted leave to amend his Amended Complaint if I dismiss any of his claims. (*See* Doc. No. 24 at 14-15). Rule 15 provides that a party may amend a pleading once "as a matter of course" and subsequently only "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of

---

12). Considering these factual allegations together and taking them as true, Lampkin plausibly alleges Harrison knew Lampkin had been approved for FMLA leave through September 27, 2020, which necessarily requires the inference that Harrison knew he had *requested* FMLA leave. Therefore, Lampkin has pled Harrison knew of his request for an accommodation.

the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

The Sixth Circuit disfavors a request for leave to amend a complaint appended to a brief opposing a motion to dismiss. *See, e.g.*, *Alexander v. Eagle Mfg. Co.*, 714 F. App'x 504, 510 (6th Cir. 2017). This is because such a request rarely provides a defendant with proper notice of the content of a proposed amended complaint, as Rule 15 requires. *See id.* at 510 n.4. Lampkin's request is a case in point: he asks for leave to amend the Amended Complaint but "did not identify what amendments he would make to his complaint, nor did he attach a copy of the amended complaint to his brief." *Id.* at 510; *see also Kuyat v. BioMimetics Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (affirming the denial of a request for leave to amend the complaint because the plaintiffs "did not attach a copy of their amended complaint" to their briefing). Because Lampkin has failed to provide Defendants with notice of any proposed amendments, I deny his request for leave to amend his complaint at this time.

18

## V. CONCLUSION

For the reasons stated above, I grant Defendants' motion to dismiss in part and deny it in part. (Doc. No. 22). Defendants' motion to dismiss is granted as to Lampkin's claims of: (1) Title VII discrimination to the extent he seeks recovery for any adverse action other than his termination; (2) Title VII retaliation; and (3) age-based retaliation in violation of the ADEA Ohio law. It is denied as to all other claims. And Lampkin's request for leave to amend his complaint is denied. (Doc. No. 26 at 15-16).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge